IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:13cr40 |
| | ) | |
| DIANA SHIPPING SERVICES S.A., | ) | |
| | ) | |
| IOANNIS PROKAKIS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANTONIOS BOUMPOUTELOS, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

JOINT RESPONSE OF THE UNITED STATES AND DANILO TAN
IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR AN EXPEDITED RETURN
DATE FOR THE SUBPOENA SERVED UPON DANILO TAN

The United States of America and Danilo Tan, by and through their undersigned counsel, submits this memorandum of law in response to the defendants' Joint Motion for an Expedited Return Date for the Subpoena Served Upon Danilo Tan. Because the defendants' request does not comport with the requirements of *United States v. Nixon*, is untimely, and intrudes upon the attorney-client privilege, the United States and Danilo Tan respectfully request that the Court deny the defendants' motion and quash the subpoena.

**Factual Background**

On September 22, 2012, Coast Guard personnel from Coast Guard Sector Hampton Roads conducted a Port State Control inspection of the Motor Vessel *Thetis* (*Thetis*). During the course of the inspection and subsequent investigation, the Coast Guard inspectors discovered that

1

Defendants were engaged in illegally discharging oily waste into the sea and subsequently covering up that activity.

The Coast Guard was tipped off by two of the engineering crewmembers aboard *Thetis*, the wiper, Junel Laurie, and the oiler, Danilo Tan.  Laurie had seen a Power-Point presentation from the Department of Justice, Environmental and Natural Resources Division, Economic Crimes Section, concerning the illegal discharge of oily water through a "magic pipe."  Based upon this presentation and their knowledge of the illegal discharges occurring onboard *Thetis*, Laurie sent an email to the Environmental Crimes Section from a port of call in Canada. Included with this email were photographs taken by Laurie with the camera on his cellular telephone.  These photos were transferred to Tan's computer and then to a flash drive where they were loaded onto a computer at a Seaman's Church in Canada and emailed to the Environmental Crimes Section.  From there, the information was forwarded to the Coast Guard.

On March 20, 2013, an eleven count indictment was returned against the defendants.  On May 22, 2013, a superseding indictment was returned that corrected several minor "scrivener's" errors.  Once the original indictment was returned by the Grand Jury and the defendants were arraigned, the government promptly provided discovery to the defendants.  It is clear from the discovery, which included numerous Coast Guard Investigative Service and Environmental Protection Agency Criminal Investigative Division reports, that defendants ordered the installation and use of so-called "magic pipes" to discharge machinery space bilge water directly into the sea and failed to properly document such discharges in the vessel's Oil Record Book prior to every voyage the vessel made to the United States.  The discovery also makes clear the above referenced sequence of events concerning Laurie and Tan.  Defendants have been provided with a full forensic image of Laurie's "SD" card from the camera phone that was used

to take the pictures.  This forensic image contains the metadata for the pictures that Laurie and Tan emailed to the Department of Justice.

On April 10, 2013, the defendants, DIANA SHIPPING SERVICES, S.A., IOANNIS PROKAKIS, and ANTONIOS BOUMPOUTEOS were arraigned on the original indictment. During the arraignment, defendants agreed that the filing deadline for all motions would be May 20, 2013, some 40 days after the arraignment and approximately sixty days prior to the commencement of trial in this matter.

On May 29, 2013, defendants were arraigned on the superseding indictment.  During the arraignment, the Court extended the motions deadline for each defendant to June 12, 2013.

<u>Discussion</u>

Defendants have failed to satisfy the four-factor test established in *United States v. Nixon* to determine that a subpoena *duces tecum* is appropriate. The Supreme Court has stated that Rule 17 does not contravene Rule 16's limited right of discovery.  *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951).  Thus, the court "may quash or modify the subpoena if compliance would be unreasonable or oppressive."  *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010) (citation omitted).  A Rule 17(c) subpoena is presumed "unreasonable or oppressive" unless the moving party shows that: (1) the requested documents are evidentiary and relevant; (2) the documents cannot be reasonably procured through due diligence in advance of trial; (3) the movant cannot prepare for trial, or keep the trial from being delayed, without having such documents in advance of trial; and (4) the application is made in good faith and is not intended as a general "fishing expedition."  *United States v. Nixon*, 418 U.S. 683, 699-700.

1.   <u>The Defense has not demonstrated that they make this application in good faith and not as a "fishing expedition."</u>

First, the defense has not satisfactorily shown that their application is made in good faith, and is not intended as a "fishing expedition."  The movant has the burden of showing their application for subpoena is made in good faith, and is not "unreasonable or oppressive."  A subpoena is "unreasonable or oppressive" if it is "excessively broad" or "overly vague." *In re Grand Jury Doe No. G.J. 2005-2*, 478 F.3d 581, 585 (4th Cir. 2007).

In its motion, the defense has severed the information it claims to require from the information it actually requests.  The defense focuses on the report Tan and Laurie prepared, using photographs taken by Laurie and downloaded to Tan's computer.  These photographs were then loaded onto a flash drive, transferred to a computer during a port call in Canada, and eventually transmitted to the Department of Justice.  The defendants states that the original metadata from these files has not been provided to the defendants, and seeks this metadata "to determine when these photographs and files [sent to the Department of Justice] were created and/or modified, and what information regarding the M/V THETIS was transferred to and/or from Mr. Tan's computer and other electronic storage devices by Mr. Laurie and Mr. Tan."  ECF 61 at 5.[1]  The defendants' request, therefore, indicates a specific subset of information: the metadata concerning the images and files taken and released to the Department of Justice.  However, what defendant stated goal is in direct conflict with their actual request for a mirror image of Tan's *entire* computer hard drive.  *Id.*  The defense, then, does not seek a specific subset of files or information, but rather the entire contents of the computer.  They provide no

---

[1] As noted above, the defendants have been provided with the metadata from the original photographs by virtue of the forensic image of Laurie's SD card.  The government sees no reason, nor does the defense offer one, as to why possible metadata relating to the image being stored on Tan's computer would even be relevant.

technical or guiding information to demonstrate why, in seeking a finite subsection of identifiable files and metadata, they must mirror the entire hard drive.

Requesting entire files rather than specific documents indicates a "fishing expedition." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir.), *cert. denied*, 469 U.S. 871 (1984). The United States Court of Appeals for the Fourth Circuit has a strong presumption against requests for a wide swath of information without support for how the entire contents are relevant. In *United States v. Richardson*, a defendant charged with distribution of child pornography sought to claim that his internet service provider discovered the illegal images by unconstitutionally searching his account as part of a partnership with the government. 607 F.3d 357 (4th Cir. 2010). Pursuant to this, Richardson issued a subpoena *duces tecum* in which he sought the production of "essentially any document that would support his theory that AOL was in an agency relationship with the government," including all paperwork of any kind relating to AOL's coordination of efforts with government entities. *Id*. at 368. The court concluded that the district court did not abuse its discretion in granting AOL's motion to quash because there was a severe lack of specificity in his document requests: "Richardson is merely fishing for evidence that might support his theory, as if he were in the discovery phase of a civil action." *Id*. Comparatively, in *In re Martin Marietta Corp.*, an employee sought documents from his former employer to prove that he was a scapegoat for a scheme to improperly claim travel rebates and reimbursement from the Department of Defense. 856 F.2d 619 (4th Cir. 1988). The court denied a motion to quash his subpoena, finding that is requests for interview notes, transcripts, and correspondence relating to his employer's settlement agreement with the Department of Defense were described with "sufficient specificity," and that the defendant "had, at the district court's order, greatly limited the scope of documents sought." *Id*. at 622.

In the instant case, the defense has cleverly disguised its request for the whole of Tan's computer in the name of seeking a specific file set. They have failed to adduce evidence as to how the metadata of the images and documents submitted to the Department of Justice, which are ostensibly the files sought, require the Court to order Tan's entire computer hard drive mirrored, and cannot be separated from the hard drive and provided to the defense separately. They at times have couched this request in vague language—itself somewhat fatal to a finding of specificity—to imply that they require the entire computer. Defense claims that "forensic imaging and analysis of the computer's contents will verify when the photographs provided by Mr. Tan and Mr. Laurie were actually taken," without indicating how the "computer's contents" *as a whole* will verify this information. ECF at 61 at 6. Defense avers that "production of the computer prior to trial is necessary in order to review the files contained on the computer and any associated report prepared by a forensic computer expert, which will take several days," again without explaining what "files" they seek beyond the photographs, or how the metadata cannot be removed without examining the computer as a whole. ECF at 61 at 7. The defense has been both excessively broad and overly vague with its subpoena request. As a result, they have failed to show that their request is made in good faith and is not a "fishing expedition."

      2.    <u>The Defense has not demonstrated that all of the requested documents are evidentiary and relevant.</u>

Similar to its failure to limit the scope of its subpoena, the defense has not demonstrated that the entire hard drive contents are both evidentiary and relevant. In their motion, defendants repeatedly refer to the "original meta data and other information" contained on Tan's computer. ECF 61 at 2, 4. However, the defendants neither specify exactly what metadata or files they actually seek, nor specify why such files would be relevant to this case. Instead, they offer the Court blanket and conclusory assertions, such as, "the contents of Mr. Tan's computer and other

electronic storage devices[2] clearly contain material and relevant evidence to the extent that these devices undisputedly contain numerous files and photographs that relate to the allegations…" ECF 61 at 6. For this reason, the defendants have failed to establish that what they request is evidentiary or relevant.

A movant for a Rule 17 subpoena must clearly show that the requested documents are evidentiary and relevant; a subpoena *duces tecum* is not intended to replace pretrial discovery. *Nixon*, 418 U.S. at 700. In *United States v. Sobral*, the defendant made broad requests for the financial records of victims and witnesses to his alleged mail fraud, saying he sought these records to expose the relationship of the victims and the source of the funds invested with him. 149 F.3d 1172 (4th Cir. 1998). The defense counsel conceded that the defendant did not know what such records would reveal about most victims, and the court found the information irrelevant to all counts of his indictment. *Id*. The instant case is akin to *Sobral*. Here the defendants make broad assertions that the computer in question contains relevant meta data and other electronic information but fails in specifying any specific files they wish to examine or why those files would be relevant.

Additionally, the defense claims that "[Tan's] devices undisputedly contain numerous files and photographs that relate to the allegations that were initially reported to the Department of Justice," without any way of confirming that this information remains on the computer. ECF at 61 at 6. Indeed, this request for the metadata comes some three months after discovery was provided to defendants and some ten months after the investigation was initiated and the pictures were taken. The description of the events by both parties indicates that Tan's computer was a temporary transfer point for this data as it was removed from a cell phone and placed onto a USB

---

[2] Likewise, in their motion, the defendants never specify what these "other electronic storage devices" could be or why they too would be relevant.

thumb drive for use in another computer, from which it was transmitted to the Department of

Justice.  Even if this information were still present, the continuing problem is that the defense

neglects to identify why its request for the metadata requires Tan to provide his entire hard drive

for mirroring.  This computer contain a vast array of information representing Tan's personal and

private information and computer use data, none of which is relevant to the matter at hand

according to the defense's own characterization of its needs.

3.      The Defense's request is untimely.

Additionally, the defense has failed to submit its joint motion in a timely fashion.  The

deadline for motions in the instant case was May 20, 2013. The defense was granted an

additional period of time to submit motions, and this time period elapsed on June 10, 2013.

Furthermore, the defense was provided with enough information based on disclosures by the

government to realize that this computer existed but was not in the government's possession, and

was never forensically mirrored, by no later than April of 2013.  The Fourth Circuit has rejected

motions for subpoena when they are past deadlines set by the court.  *See United States v.

Fitzgerald*, 416 Fed. Appx. 238 (4th Cir. 2011) (noting, in upholding the trial court's decision to

quash subpoena, that the subpoena requests arrived nearly five months after discovery had been

closed).  This current subpoena and motion by defendants, at the eleventh hour, is well past

either of the two motions deadlines set by the Court.  Defendants have failed to establish "good

cause" as to why their motion is untimely and the Court should therefore deny it.

4.      The Defense's request will intrude upon the Attorney-Client Privilege

Finally, as noted above, Tan has been using his computer continuously since the

beginning of this case for a number of personal reasons, including to communicate with his

attorney.  Therefore, the computer which the defendants wish to subpoena contains protected

8

attorney-client communications.  A full forensic image of Tan's computer at the hands of defendants' experts will necessarily expose attorney-client communications.  Tan asserts, through counsel, his right to keep his attorney client communications confidential and respectfully requests that the Court deny this motion and quash the subpoena.

### Conclusion

The United States and Danilo Tan respectfully request that the defendants' Joint Motion For an Expedited Return Date for the Subpoena Served Upon Danilo Tan be denied and the subpoena be quashed.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By:      _____/s/_____
         Joseph L. Kosky
         Assistant United States Attorney
         Attorney for the United States
         United States Attorney's Office
         101 West Main Street, Suite 8000
         Norfolk, Virginia 23510
         Office Number (757) 441-6331
         Facsimile Number (757) 441-3205
         E-Mail Address - joseph.kosky@usdoj.gov

ROBERT G. DREHER
ACTING ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division
United States Department of Justice

By:       _____/s/_____
Kenneth E. Nelson
Trial Attorney
Environmental Crimes Section
United States Department of Justice
601 D. Street, NW, Suite 2814
Washington, DC 20004
Office Number (202) 305-0435
Facsimile Number (202) 514-8865
E-Mail Address – kenneth.nelson@usdoj.gov

DANILO TAN

By:       _____/s/_____
Suzanne V. Suher Kashmar
Assistant Federal Public Defender
Virginia State Bar No. 37387
Attorney for Danilo Tan
Office of the Federal Public Defender
150 Boush Street
Norfolk, Virginia 23510
Office Number (757) 457-0800
Facsimile Number (757) 457-0880
E-Mail Address – suzanne_katchmar@fd.org

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Michael G. Chalos, Esquire
Chalos O'Connor, LLP
366 Main Street
Port Washington, New York 11050
mchalos@codus-law.com

Trey R. Kelleter, Esquire
Vandeventer Black, LLP
500 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
tkelleter@vanblk.com

Carl Woodward, Esquire
Carella, Byrne, Cecchi, Olsen, Brody, & Agnello, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068
cwoodward@carellabyrne.com

Lawrence Woodward, Jr., Esquire
Shuttleworth, Ruloff, Swain, Haddad & Morecock, P.C.
4525 South Boulevard, Suite 300
Virginia Beach, Virginia 23452
lwoodward@srgslaw.com

Michael K. Twersky, Esquire
Fox Rothschild, LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
mtwersky@foxrothschild.com

Patrick H. O'Donnell, Esquire
Kaufman & Canoles
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
phodonnell@kaufcan.com

_____/s/_____
Joseph L. Kosky
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-3205
E-Mail Address - joseph.kosky@usdoj.gov