

FIL...
DEC – 2 2013
CLERK, U.S. DISTRICT...
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                          CRIMINAL NO. 2:13cr40

DIANA SHIPPING SERVICES, S.A.,

IOANNIS PROKAKIS,
and

ANTONIOS BOUMPOUTELOS,

                    Defendants.


<u>OPINION AND ORDER</u>

This matter is before the Court on Defendants' consolidated post-trial motion for judgment of acquittal on Counts 5, 6, 8 and 9.  ECF No. 113.  The primary focus of Defendants' motion is the assertion that the above referenced counts are multiplicitous.  For the reasons set forth below, Defendants' motion is **DENIED**.

### I. Factual and Procedural Background

During calendar year 2012, defendant Diana Shipping Services, S.A. ("Diana Shipping"), operated the Motor Vessel Thetis ("M/V Thetis"), a 40,000 gross ton foreign-flagged vessel engaged in international commercial maritime operations.  During relevant portions of 2012, defendant Ioannis Prokakis and defendant Antonios Boumpoutelos served, respectively, as the Chief Engineer and the

Second Engineer on board the M/V Thetis (the three defendants are collectively referred to herein as "Defendants"). The charges in the superseding indictment stem from Defendants' alleged involvement in failing to accurately document their overboard discharges of machinery space bilge water from the M/V Thetis. Pursuant to international law, such discharges, which occurred in waters outside the United States, should have been filtered through a pollution control device known as an "Oily Water Separator." See Benedict S. Gullo, The Illegal Discharge of Oil on the High Seas: The U.S. Coast Guard's Ongoing Battle Against Vessel Polluters and a New Approach Toward Establishing Environmental Compliance, 209 Mil. L. Rev. 122, 137-42 (2011) (discussing the International Convention for the Prevention of Pollution from Ships (MARPOL) and the implementation of such international agreement in the United States). Defendants' offenses were reported to the United States Coast Guard through a "whistleblower" engine room crewmember that was on board the M/V Thetis in 2012. As a result of such tip, the M/V Thetis was boarded by the United States Coast Guard in Norfolk, Virginia, on September 22, 2012. In the months preceding the September 22 boarding, the M/V Thetis entered the port of Newport News, Virginia, on May 2, 2012, and again on July 8, 2012. However, no Coast Guard boarding or investigation took place during such earlier port calls.

On July 24, 2013, this Court began a two-week criminal bench trial in this matter. At the conclusion of the government's case,

2

Defendants filed a written Rule 29 motion challenging the government's evidence with respect to Counts 5, 6, 8 and 9 of the superseding indictment, claiming that such evidence failed to demonstrate that the actus reus and mens rea for the alleged offenses occurred within the jurisdiction of the United States.[1]   ECF No. 94. Count 5 (May 2, 2012 port call) and Count 6 (July 8, 2012 port call) allege that Defendants "did knowingly conceal, cover up, and falsify and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the M/V Thetis," in violation of 18 U.S.C. § 1519.   ECF No. 30, at 15-16.   Count 8 (May 2, 2012 port call) and Count 9 (July 8, 2012 port call) allege that Defendants "did knowingly conceal and cover up a tangible object, that is, bypass piping used on the M/V Thetis that was used to discharge . . . machinery space bilge water directly into the sea by circumventing required pollution prevention devices," in violation of 18 U.S.C. § 1519.   ECF No. 30, at 17-19.   Additionally, at trial, Defendants made an oral Rule 29 motion for judgment of acquittal as to all counts of the superseding indictment based on a general sufficiency of the evidence argument.   At the conclusion

---

[1] It appears that Defendants have taken somewhat inconsistent views in their prior written motion for judgment of acquittal, ECF. No. 94, at 14-17, and their reply brief in support of their current motion, ECF No. 117, at 3, regarding the proper interpretation of the superseding indictment. Defendants' initial argument relied on the indictment's use of the phrase "terminating . . . in the United States," whereas their reply brief inexplicably omits the word "terminating" from the language it quotes from the indictment.

3

of the trial, the Court orally denied both Rule 29 motions and found all three Defendants guilty of all charged counts.

Subsequent to trial, Defendants jointly filed the instant Rule 29 motion, again challenging Counts 5, 6, 8 and 9 of the superseding indictment.  As discussed below, while the focus of Defendant's prior Rule 29 motion was jurisdictional, the focus of the instant motion is the assertion that the disputed counts are multiplicitous. Defendants' joint motion has been fully briefed and is now ripe for review.

## II. Standard of Review and Jurisdictional Note

Federal Rule of Criminal Procedure 29 allows a district court to enter a judgment of acquittal for "any offense on which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The court must deny such a motion and sustain a guilty verdict in a criminal case tried by a jury "'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Cameron, 573 F.3d 179, 183 (4th Cir. 2009) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). "'[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Id. (quoting Burgos, 94 F.3d at 862).

Although it is undisputed that this Court lacks jurisdiction over improper discharges of oil made by a foreign flagged vessel in

4

international waters, it is likewise undisputed that the Court has jurisdiction over associated record keeping violations that occur within U.S. waters.   Pursuant to the international MARPOL treaty of which the United States is a signatory, Congress enacted the Act to Prevent Pollution from Ships ("APPS").   See Angelex Ltd. v. United States, 723 F.3d 500, 502 (4th Cir. 2013) (citing 33 U.S.C. §§ 1901-15).   Pursuant to APPS, while in U.S. territorial waters, a vessel must "maintain" an Oil Record Book ("ORB").   Id. (citing 33 C.F.R. § 151.25).   The regulatory requirement that an ORB be "maintained" has been interpreted to require that a ship entering U.S. waters possess and "maintain" an accurate ORB.   See id. ("'[W]e read the requirement that an oil record book be "maintained" as imposing a duty upon a foreign-flagged vessel to ensure that its oil record book is accurate (or at least not knowingly inaccurate) upon entering the ports [or] navigable waters of the United States.'" (quoting United States v. Jho, 534 F.3d 398, 403 (5th Cir. 2008))).

Here, Defendants were charged with a § 1908 APPS violation for each 2012 port call in this jurisdiction during which they failed to maintain an accurate ORB.   Additionally, for each such port call, Defendants were charged with one § 1519 violation for having falsified/covered up the ORB and a second § 1519 violation for having concealed the physical bypass pipe that was used to bypass the onboard pollution control equipment and discharge overboard the M/V Thetis' machinery space bilge water.

5

### III. Discussion

#### A.  Renewed Argument

Defendants' written Rule 29 motion that was submitted during trial argued that the government's evidence with respect to Counts 5, 6, 8 and 9, was insufficient to demonstrate that the actus reus and mens rea for the alleged offenses occurred within the jurisdiction of the United States.[2]  Defendants also made an oral motion generally challenging the sufficiency of the evidence as to all counts.  To the extent that Defendants' instant motion again raises a jurisdictional challenge, or again challenges generally the sufficiency of the evidence, such motion is denied for the same reasons the Court stated on the record on August 8, 2013.  See United States v. Taohim, -- F. App'x --, 2013 WL 3884232, at *4 (11th Cir. July 30, 2013) (rejecting the defendant's argument that he "could not have intended to impede, obstruct, or influence the Coast Guard's investigation [in violation of § 1519] when he allegedly ordered the omission . . . from the garbage record book because at that time, the vessel was outside the territory of the United States and no investigation was pending," because the jury rationally could have concluded that the defendant "anticipated that the garbage record book would be reviewed in a future [Coast Guard] proceeding and that he ordered it falsified for that reason"); see also United States

---

[2] As previously noted, each of the disputed counts alleges a § 1519 offense associated with one of the Newport News, Virginia, 2012 port calls during which the M/V Thetis was not boarded and inspected by the U.S. Coast Guard.

v. Royal Caribbean Cruises, Ltd., 11 F. Supp. 2d 1358, 1364 (S.D. Fla. 1998) (noting that the "extraterritoriality doctrine" provides an alternative basis for jurisdiction over false statements made in international waters if the defendant intends the extraterritorial acts to have an effect within the United States (citing United States v. Padilla-Martinez, 762 F.2d 942, 950 (11th Cir. 1985), United States v. Stuart-Caballero, 686 F.2d 890, 891 (11th Cir. 1982), and United States v. Williams, 617 F.2d 1063, 1076 (5th Cir. 1980) (en banc))); Gullo, supra, at 144-45 (noting that the False Statements Act and other general criminal laws, to include § 1519, "allow for enforcement of environmental laws beyond the [territorial seas] jurisdictional limitation contained in the APPS").[3]

---

[3]   Even if this Court was to assume that it lacked jurisdiction under § 1519's "false entry" clause as to all ORB entries made when a vessel is outside of U.S. waters, a conclusion this Court by no means makes, the Court would find that jurisdiction is proper under the "conceals" or "covers up" clause of § 1519, both of which were also charged in Counts 5 and 6 of the superseding indictment.   It is beyond dispute that a merchant vessel entering United States waters, to transact business, places the accuracy of the ORB within the jurisdiction of the United States.   See Angelex Ltd., 723 F.3d at 502 (referencing out-of-circuit opinions holding that, while in U.S. waters, a foreign flagged-ship has a duty "'ensure that their ORBs are accurate (or at least not knowingly inaccurate)'" (quoting United States v. Ionia Management S.A., 555 F.3d 303, 309 (2d Cir. 2009)); see also Cunard S.S. Co. v. Mellon, 262 U.S. 100, 124 (1923) ("The merchant ship of one country voluntarily entering the territorial limits of another subjects herself to the jurisdiction of the latter.").   Here, the trial evidence demonstrated that experienced international mariners, to include the Defendants in this case, are well aware of their legal obligation to accurately maintain the ORB and well aware that the U.S. Coast Guard would scrutinize the ORB during a Port State Control examination.   See Michael G. Chalos & Wayne A. Parker, The Criminalization of Maritime Accidents and Marpol Violations in the United States, 23 U.S.F. Mar. L.J. 206, 231, 237 (2010-2011) (noting that since 2001, "the Coast Guard has undertaken a comprehensive program" of boarding, and scrutinizing the records and logs of, "all foreign flag-state vessels calling U.S. ports," and that the

## B.  Newly Asserted Multiplicity Argument

To the extent that Defendants advance a new post-trial "multiplicity" theory seeking dismissal of Counts 5, 6, 8 and 9, such

criminalization of MARPOL violations "has become a fact of life for shipowners, operators, managers, and crewmembers" in the United States and in a number of other countries) (emphasis added).

The evidence in this case demonstrated not only that Defendants failed to accurately "maintain" an ORB in U.S. waters in that the M/V Thetis' ORB failed to document improper discharges of machinery space bilge water, but that Defendants also made affirmative false entries in the ORB by notating that pollution control equipment was utilized when, in fact, it was not. The trial evidence established that such affirmative false entries were made with the intent to conceal both the practice of improperly discharging bilge water into the sea (an international issue) and the practice of criminally entering U.S. waters with a knowingly inaccurate ORB (a domestic issue). Accordingly, each time the M/V Thetis sailed into U.S. waters with a freshly falsified ORB that was falsified in contemplation of a potential U.S. investigation, Defendants not only failed to "maintain" an accurate ORB, but concealed and covered up the inaccuracy of their ORB through maintaining the ORB with entries designed to mislead a Coast Guard investigator. Stated another way, assuming that no investigation occurs during a given voyage into U.S. waters, it can be argued that the tacit omission of an event from an ORB is a § 1908 "failure to maintain" APPS violation, but is not a § 1519 violation. In contrast, when a vessel enters U.S. waters after having affirmatively falsified the ORB with the intent to conceal both the event not documented (an international issue) and the inaccuracy of the ORB itself (a domestic issue), such defendants commit both an APPS § 1908 violation and a § 1519 violation. Here, because the ORB contained numerous entries falsely documenting operation of the Oily Water Separator, documentation that made the ORB appear legitimate on its face when in actuality it was false, Defendants, while in U.S. waters, "concealed" and "covered up" the falsity of their ORB. Accordingly, jurisdiction is alternatively proper under these clauses of § 1519.

The above alternative jurisdictional analysis regarding the ORB is further illuminated by considering the application of § 1519's "conceals" and "covers up" clauses to the physical bypass pipe possessed by Defendants in U.S. waters. Here, Counts 8 and 9 charge that each time Defendants entered a port in this jurisdiction, they violated § 1519 by physically hiding the bypass pipe used to improperly discharge machinery space bilge water into the ocean. Such pipe was hidden in an effort to avoid detection from authorities, including the U.S. Coast Guard. Regardless of whether the pipe was hidden before the M/V Thetis entered U.S. waters, such "concealment" was plainly ongoing when the vessel entered U.S waters with the pipe stashed in a location designed to avoid detection. Along the same lines, covering up the ORB's falsity through intentionally deceptive entries continued into the jurisdiction of the United States when the ORB was brought into U.S. waters with the intent to mislead the U.S. Coast Guard.

newly advanced theory is denied as untimely because challenges to an indictment are deemed waived if not advanced prior to trial. Alternatively, even if this Court reached the merits of Defendants' waived claim, such claim would be denied.

### 1. Multiplicity Must be Raised Pre-trial

Rule 12(b)(3) of the Federal Rules of Criminal Procedure states that a motion "alleging a defect in the indictment" must be filed prior to the commencement of trial. Fed. R. Crim. P. 12(b)(3)(B). Such pre-trial filing requirement applies to the assertion that an indictment is multiplicitous. See United States v. Lawing, 703 F.3d 229, 236 n.7 (4th Cir. 2012) ("[A] defendant must raise a challenge to a defect in the indictment, i.e., multiplicity, before trial." (citing Fed. R. Crim. P. 12(b)(3)(B))) (emphasis added). "[P]ursuant to Rule 12(e), a party that fails to lodge such an objection prior to trial waives his multiplicity defense." Id. Once waiver has occurred, relief from such waiver "is appropriate only if the moving party demonstrates cause for the failure to [timely] object and actual prejudice resulting from the defect." United States v. Colton, 231 F.3d 890, 909 (4th Cir. 2000).

Here, Defendants failed to raise their multiplicity defense prior to trial, or even during trial, and have not demonstrated good cause why such failure should not constitute a waiver. See United States v. Cabrera-Beltran, 660 F.3d 742, 753 (4th Cir. 2011) ("Because the defendant fails to provide a showing of good cause,

his [post-trial] claim that the indictment [suffered from multiplicity or duplicity] is waived.").[4] Accordingly, Defendants' untimely post-trial multiplicity claim is **DENIED** as waived.

## 2. Multiplicity Claim Fails on the Merits

Alternatively, even if Defendants had not waived their multiplicity argument, the Court would deny the pending motion on the merits. Defendants' multiplicity argument, distilled to its essence, contends that the proper "unit of prosecution" under § 1519 would permit only one charge per falsified document and/or one charge per actual government investigation. Under such theory, Defendants contend that their conduct can only support a single § 1519 conviction associated with the ORB because their conduct only involved falsification of a single document,[5] and there was only a single

---

[4] The Court rejects Defendants' suggestion that it was necessary to first hear the trial evidence in order to even identify the purported defect in the superseding indictment. Defendants, as operators of, or officers on, the M/V Thetis were well aware in advance of trial that the Coast Guard conducted a Port State Control inspection during only one of the three port calls charged in the superseding indictment. Furthermore, the government filed a trial memorandum in advance of trial setting forth a summary of the case that referenced only one Port State Control inspection. ECF No. 85. Separately, the Court rejects Defendants' suggestion that the manner in which this Court would likely have resolved a timely filed pre-trial motion asserting multiplicity somehow obviates the pretrial filing requirement that is expressly set forth in the Federal Rules. Regardless of whether this Court may have deferred ruling on a pre-trial motion, waiver occurs when a motion is not timely filed. It should go without saying that a timely pre-trial motion asserting a defect in an indictment could impact the government's decision to seek a superseding indictment to correct the error, could impact the manner in which evidence is presented at trial and, in a jury trial, could impact the instructions of law provided by the Court at the conclusion of trial and/or the jury verdict form.

[5] Defendants likewise contend that their conduct supports no more than one § 1519 charge for concealing the physical bilge bypass pipe.

government investigation – the Port State Control inspection on September 22, 2012.  As discussed below, such theory fails on the merits.

### a. Unit of Prosecution Established by Statutory Language

The unit of prosecution for a criminal offense determines what separates a single violation of the statute from multiple violations. United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012).  As explained by the United States Supreme Court, "[i]t is Congress, and not the prosecution, which establishes and defines offenses," and Congressional authority includes the right to define "a statutory offense by its prescription of the allowable unit of prosecution." Sanabria v. United States, 437 U.S. 54, 69-70 (1978) (internal quotation marks and citations omitted).  "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this congressional choice," and "[f]ew, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses."  Id.  In order to determine the proper unit of prosecution for a disputed statute, a district court is required to begin with the statutory text.  United States v. Elliott, 849 F.2d 886, 889 (4th Cir. 1988); see Shrader, 675 F.3d at 313 (noting that, in Shrader, the Fourth Circuit needed to "look no further than the plain words of the statute to reach th[e] conclusion" that the statute at issue makes "the victim, rather than the course of conduct" the proper unit of prosecution).  If the text

11

alone is insufficient, a district court must consider the legislative history and "the overall statutory scheme." Elliott, 849 F.2d at 889. "If, after such examination, the court determines that the statute is ambiguous, it must 'resolve doubts in favor of lenity for the accused.'" United States v. Salad, 908 F. Supp. 2d 728, 729 (E.D. Va. 2012) (quoting Elliott, 849 F.2d at 889).

Beginning with the plain language of the statute, § 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519. Such broad statutory language sets forth numerous clauses criminalizing various conduct, including altering, concealing, covering up, falsifying, or making a false entry in, a record, document or tangible object. Regardless of the specific clause invoked, the statute requires that the conduct occur "with the intent to impede, obstruct, or influence" an investigation of, a contemplated investigation of, or the proper administration of, a matter within the jurisdiction of a United States department or agency. Id.

Because § 1519 includes numerous clauses setting forth various ways in which such criminal statute can be violated, in order to

determine the applicable unit of prosecution, the threshold step is to determine which clause is at issue. Most relevant to Defendants' argument in this case, the statute includes a clause criminalizing falsifying a document ("falsifies" clause), as well as a clause criminalizing making a false entry in a document or record ("false entry" clause). Additionally, the statute contains a clause criminalizing the concealment of a record, document, or tangible object ("conceals" clause) and a clause criminalizing the covering up of a record, document, or tangible object ("covers up" clause). Defendants' motion contends that § 1519 can only be enforced once per falsified document and once per concealed object. However, as discussed below, the Court finds that the proper unit of prosecution under the false entry clause of the statute is that each separate and distinct false entry, as contrasted with each physically separate document, is the proper unit of prosecution. Similarly, the Court concludes that temporally separate and distinct acts of "concealment" or "covering up" are sufficient to warrant separate § 1519 charges under such clauses.

In United States v. Schmeltz, 667 F.3d 685 (6th Cir. 2011), the United States Court of Appeals for the Sixth Circuit addressed a duplicity challenge to a § 1519 charge, and in so doing, expressly distinguished between the different clauses of § 1519.[6] The Schmeltz

---

[6] An indictment is duplicitous when it improperly joins "two or more distinct and separate offenses in one single count." United States v.

opinion squarely addressed "whether § 1519 criminalizes the creation of a false document . . . or individual false statements" within a document. Id. at 688. In resolving the issue, the Sixth Circuit carefully examined the various clauses of § 1519, and squarely addressed the differences in statutory language between the "falsifies" clause and the "false entry" clause. Id. As to the "falsifies" clause, which was the clause at issue in Schmeltz, the court concluded that it was "intended to punish the falsification of a document, rather than specific statements or omissions within a document." Id. Accordingly, multiple false statements (or omissions) within the same narrative report that documents the events of a single day support a single § 1519 charge. Id. Notably, the defendant in Schmeltz "was not charged with making 'a false entry,' but rather the indictment alleged he 'falsified a document.'" Id. The government was therefore not required to include in the indictment a separate count for each individual allegedly false statement (or omission) in the same report. Id. Although the Sixth Circuit was not called upon to expressly define the unit of prosecution for the statute's "false entry" clause, the court agreed with the government that "the 'false entry' charge is usually reserved for entries made on pre-existing forms rather than narrative reports." Id.

---

Smith, 373 F.3d 561, 563 (4th Cir. 2004).

Here, if Defendants' multiplicity claim had not been waived and this Court was called upon to determine the unit of prosecution for the false entry clause of § 1519, the Court would find that the language of the statute itself is sufficient to determine the unit of prosecution. The "false entry" clause, <u>at a minimum</u>, criminalizes each separate knowingly false entry made in a record <u>on a separate and distinct occasion</u>, regardless of whether each entry was made in the same historical record book or in a separate single-page document.[7] See <u>United States v. Jameson</u>, 972 F.2d 343, 1992 WL 180146, at *9-10 (4th Cir. 1992) (unpublished table opinion) (rejecting a multiplicity challenge to an indictment and holding that two slightly different false statements made <u>within the same document</u> supported two separate counts of making a false statement in violation of 18 U.S.C. § 1001); see also <u>Colton</u>, 231 F.3d at 908-09

---

[7] Conceivably, multiple associated false entries made <u>at the same time</u> to conceal the <u>same misconduct</u> might be insufficient to support multiple § 1519 counts. <u>Cf. United States v. Mason</u>, 611 F.2d 49, 52-53 (4th Cir. 1979) (finding that multiple related false statements made at the same time within the same "transaction" of purchasing multiple firearms only supported a single violation of the statute at issue in that case). That said, there is some authority from other circuits indicating that statutory language similar to § 1519 supports a separate criminal count for each and every false entry, regardless of whether they are made on the same day and in the same document. See <u>Bower v. United States</u>, 296 F. 694, 695-96 (9th Cir. 1924) ("The statute prohibits the making of any false entry, not the making of a false report, and each false entry constitutes a separate and distinct crime, even though the several entries are made on the same day and contained in the same statement or report."). However, this Court need not reach such issue because the charged false entries in the record at issue in this case (the ORB) occurred days, weeks, or months apart, on entirely separate ocean voyages, to conceal entirely separate discharges of machinery space bilge water into the ocean, leaving the Court with no doubt that such temporally distinct false entries are sufficient to support multiple violations of the "false entry" clause of § 1519.

(indicating that even when the unit of prosecution is the "<u>execution</u> of a scheme to defraud a financial institution, [and] <u>not</u> each act in furtherance of such scheme," acts that are "<u>chronologically and substantively independent</u> from the other acts charged as the scheme" constitute separate executions, and thus, "courts have found each in a series of separate diversions of funds, separate loans, and separate extensions of a loan agreement, to be a separate execution of a bank fraud scheme properly chargeable in a separate count of the indictment") (final emphasis added) (internal quotation marks and citations omitted); <u>United States v. Marquardt</u>, 786 F.2d 771, 774 n.2, 779 (7th Cir. 1986) (rejecting a multiplicity challenge in a case involving separate false entries in bank records, made on separate days, in violation of a statute criminalizing "'mak[ing] any false entry in any book, report or statement of or to any such institution'" (quoting 18 U.S.C. § 1006)).   Additionally, the statute's plain language unambiguously criminalizes acts performed "in relation to or <u>contemplation</u> of" a government investigation, and thus, there is no statutory support for Defendants' contention that § 1519 can be violated only once per <u>actual</u> investigation.

### b. Legislative History and Scheme

Furthermore, even if the Court found that the language of the statute itself was unclear, and the Court shifted its focus to the legislative history and overall statutory scheme, <u>Salad</u>, 908 F. Supp. 2d at 729, the Court would reach the same conclusion.   Notably, the

16

intentionally broad reach of § 1519, which is part of the Sarbanes-Oxley Act of 2002, has been well-documented since its passage.[8] Such legislative history and statutory scheme, therefore, at a minimum support the interpretation that the false entry clause separately criminalizes discrete written false entries, made days, weeks, or months apart, in a historical record book used to document activities over the course of several months. Cf. United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 123 (D.D.C. 2012) (noting that one of the defendants "may be correct that the ORB is bound together in one book, but the precise physical compilation of the documents is immaterial" as the defendants separately, and falsely, documented conduct occurring on separate voyages occurring one year apart).

---

[8] For example, in United States v. Gray, 642 F.3d 371 (2d Cir. 2011), the Second Circuit quoted from and relied upon the following excerpt from the Senate Report to § 1519:

> Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation. This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter. It is also sufficient that the act is done "in contemplation" of or in relation to a matter or investigation. It is also meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal government inquiries, regardless of their title. Destroying or falsifying documents to obstruct any of these types of matters or investigations, which in fact are proved to be within the jurisdiction of any federal agency are covered by this statute.

Id. at 377-78 (quoting S. Rep. No. 107-146, at 14-15 (2002), 2002 WL 863249, at *14-15) (emphases added) (footnotes omitted).

Pursuant to Defendants' proposed "one document" theory, whether one or more instances of criminal obstructive conduct occurred would be based on whether or not a staple connected multiple sheets of paper, because while separately maintained falsified documents would each support a separate count of conviction, a multi-page document/book that was bound together could only support a single count of conviction.   Such a result would ignore the most natural reading of the statute and strain credulity because the number of permissible criminal counts could turn entirely on a business practice regarding the manner in which records are maintained.   See United States v. Mason, 611 F.2d 49, 52-53 (4th Cir. 1979) (finding that the statute criminalizing making any false statement in conjunction with the acquisition of a firearm creates a transactional unit of prosecution regardless of how many firearms are purchased at the same time; the Fourth Circuit explicitly rejected a statutory interpretation that would support a single count if the seller allowed a buyer to fill out a single ATF form to purchase multiple guns, but would support multiple counts if the seller required a buyer to contemporaneously fill out a separate ATF form for each gun).[9]   Furthermore, the legislative history of § 1519 and the consideration of the statutory scheme as a whole both indicate that a violation of the statute is

---

[9] Although such fact has no bearing on this Court's analysis, the falsified entries in the ORB at issue in this case were actually contained in two separately bound documents, the first ORB documenting oil movements on the M/V Thetis through April 30, 2012, and the second ORB documenting oil movements between April 30, 2012 and September of 2012.

in no way tied to an actual government investigation, undercutting Defendants' contention that a § 1519 violation can only occur once per <u>actual</u> investigation.  <u>See</u> S. Rep. No. 107-146 (2002), 2002 WL 863249, at *14-15 ("<u>This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter</u>.  It is also sufficient that the act is done 'in contemplation' of or in relation to a matter or investigation.") (emphasis added).  Defendants' arguments are therefore rejected after considering the legislative history and statutory scheme.[10]

### c. Alternative Rule of Lenity Analysis

Finally, even if the Court determined that the unit of prosecution for the "false entry" clause was ambiguous after considering the statute itself, the legislative history, and the statutory scheme, application of the rule of lenity could at best

---

[10]  Although it appears likely that the government charged exactly three § 1519 violations in this case with respect to the ORB due to jurisdictional concerns, absent such concerns, each separate and distinct knowingly false entry in the ORB could support a separate § 1519 charge.  If Defendants thought that charging them with <u>only</u> three violations of § 1519 for making more than three factually distinct false entries in the ORB was duplicitous, they certainly could have challenged that fact through the <u>timely</u> filing of a pre-trial motion.  Such a challenge, however, may not have been successful.  <u>See</u> <u>United States v. Klat</u>, 156 F.3d 1258, 1266 (D.C. Cir. 1998) ("[S]everal acts may be charged in a single count if the acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant.") (internal quotation marks and citations omitted); <u>United States v. Kamalu</u>, 298 F. App'x 251, 254 (4th Cir. 2008) ("Where the indictment fairly interpreted alleges a continuing course of conduct, during a discrete period of time, the indictment is not prejudicially duplicitous.") (internal quotation marks and citations omitted).

support the interpretation that § 1519 separately criminalizes each factually distinct <u>series of false entries</u> or each factually distinct contemplated investigation.  Putting such hypothetically narrower readings of the statute into context in this case, one could conceivably argue that there are three more "lenient" interpretations of the statute, but each would still lead to the denial of Defendants' motion:

> (1) <u>a series</u> of false entries in the ORB made over the course of multiple days that were associated with <u>a single</u> improper discharge of machinery space bilge water would constitute a single § 1519 violation because although there were multiple false entries, each was made relatively close in time to conceal <u>a single use</u> of a bypass pipe to improperly discharge bilge water into the ocean *(a per discharge transactional approach)*;[11]
>
> (2) <u>a series</u> of false entries in the ORB designed to cover up <u>a series</u> of improper discharges of machinery space bilge water made during <u>the same multi-day, or multi-week, sea voyage</u> would constitute a single § 1519 violation because such related entries, all made close in time, were collectively designed to reflect proper handling and disposal of oil products over the course of a single continuous sea voyage *(a per voyage continuing conduct approach)*; or
>
> (3) <u>a series</u> of false entries in the ORB designed to cover up <u>a series</u> of improper discharges of machinery space bilge water made during <u>a series of consecutive multi-day, or multi-week, sea voyages</u> that ultimately terminate in a United States port

---

[11] See <u>Mason</u>, 611 F.2d at 52-53 (adopting transactional approach to statute criminalizing false statements made in conjunction with the contemporaneous purchase of one or more firearms); <u>United States v. Holtzclaw</u>, 131 F.3d 137, 1997 WL 734026, at *2 (4th Cir. 1997) (unpublished table opinion) (rejecting a multiplicity challenge to three separate money laundering counts because each involved a different financial <u>transaction</u>, two occurring one day, and the third three days later (citing <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932))).

would support a single § 1519 violation tied to the defendants'
contemplation of a single (potential) Coast Guard boarding and
investigation when the vessel came into the United States port
*(a per contemplated federal investigation approach)*.

Regardless of which hypothetical lenient interpretation was adopted,
the disputed counts in the instant indictment would not be
multiplicitous because the trial evidence demonstrated that: (1) the
improper discharges of machinery space bilge water were made on
multiple separate and distinct sea voyages; (2) the ORB was newly
falsified to conceal such temporally discrete discharges each time
the M/V Thetis entered the ports of Newport News, Virginia, or
Norfolk, Virginia; and (3) Defendants contemplated a separate
potential Coast Guard boarding/investigation in May of 2012, July
of 2012, and September of 2012.  See Sanford, 859 F. Supp. 2d at 123
(agreeing with the government that "all counts of the Superseding
Indictment are proper, and not multiplicitous" because the
indictment charged one group of violations for a voyage ending in
2010, and another group of violations for a voyage ending in 2011,
and, among other things, such counts thus charge "separate instances
of falsification of the ORB" which was "not exactly the same book
for each port call—in between the two there were additional false
entries and omissions").  Accordingly, even if the Court assumed,
arguendo, that the statute was ambiguous, Defendants' motion would
be denied.

### d. Bypass Pipe Indictment Counts

Similar to the above analysis, if this Court reached the merits of Defendants' "unit of prosecution" argument as to the counts of the superseding indictment charging concealment of the physical bilge bypass pipe, the Court would deny such motion on the merits.[12] As the trial testimony demonstrated, the bilge bypass pipe was used on multiple discrete voyages to improperly discharge machinery space bilge water directly into the sea.  This included the voyages preceding the May 2, 2012 port call, the July 8, 2012 port call, and the September 22, 2012 port call.  Each of the three times the M/V Thetis came into the ports of Newport News, Virginia, or Norfolk, Virginia, the bypass pipe was freshly hidden on the roof of the engine control room of the M/V Thetis where it would not likely have been found if the Coast Guard had boarded the vessel.  Accordingly, the trial evidence supported three separate charges for concealment because there were, at a minimum, three distinct "concealments" with the intent to obstruct a potential investigation by the Coast Guard.

The broad language of the statute, the legislative history, and the statutory scheme as a whole, all indicate that three factually and temporally distinct concealments, each occurring two months apart, and each involving the physical concealment of a physical

---

[12] Likewise, assuming arguendo that jurisdictional concerns required the government to rely on the "conceals" and/or "covers up" clause of § 1519 with respect to the ORB counts associated with the May 2012 and July 2012 port calls, as discussed in detail infra footnote 3, the Court would find that a multiplicity analysis on the merits would support a separate charge for each "entry" into U.S. waters.

object with the intent to thwart a _different_ potential Coast Guard investigation, support three distinct counts for violating the statute. See _Jameson_, 972 F.2d 343, 1992 WL 180146, at *9-10 (indicating that because the false statements at issue related to the defendant's assets and liabilities as of the date the statements were made, counts charging the defendant with making false statements in 1987, and separate counts charging the defendant with again making the same false statements in 1988, were not multiplicitous because the government could not obtain a conviction on the latter counts without proving "the additional fact that these debts were still owed and property was [still] owned" in 1988). Such conclusion holds even if the Court assumes ambiguity and applies the rule of lenity because the charged concealments were factually distinct, having occurred months apart and involving both separate acts and separate intent to impede separate potential investigations.[13] For all of the above reasons, Defendants' motion is alternatively denied on the merits.

---

[13] Although the facts before the Court do not necessitate the resolution of such issue, the Court notes that Defendants' multiplicity argument as to the physical pipes may have had some traction if the only physical evidence at issue was the sludge bypass pipe (as contrasted with the bilge bypass pipe). The trial evidence suggested that the sludge bypass pipe laid in hiding, unmoved, in between the three different port calls charged in the superseding indictment. Such ongoing or continued concealment of the same object that involved no additional actus reus (and potentially involved no additional mens rea) is factually distinct from the bilge bypass pipe, which was repeatedly used, and repeatedly hidden with the intent to avoid detection, during the months of April 2012 through September of 2012.

## IV. Conclusion

For the reasons set forth above, Defendants' post-trial motion for judgment of acquittal on Counts 5, 6, 8 and 9 (ECF No. 113) is **DENIED**. To the extent such motion renews prior Rule 29 arguments made at trial, it is **DENIED** for the same reasons explained on the record on August 8, 2013. To the extent such motion advances the newly asserted claim that the superseding indictment is multiplicitous, such claim is **DENIED** as untimely as the Federal Rules of Criminal Procedure deem such claim to be waived if not raised prior to trial. Furthermore, Defendants' multiplicity argument is **ALTERNATIVELY DENIED** to the extent that it is proper for this Court to reach its merits.

The Clerk is **INSTRUCTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

 

 

_____ /s _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 2 , 2013